NOT FOR PUBLICATION (Doc. Nos. 76 & 79)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                   :
Megan EXEL, *et al.*,              :
                                   :    Civil No. 12–4280 (RBK/KMW)
            Plaintiffs,            :
                                   :    **OPINION**
      v.                           :
                                   :
Nicole GOVAN, *et al.*,            :
                                   :
            Defendants.            :
_____:

**KUGLER**, United States District Judge:

This action comes before the Court upon the cross-motions for summary judgment of Defendant Nichole Govan (incorrectly pled as Nicole Govan) (Doc. No. 76) and Plaintiffs Megan Exel, David Exel, and Joseph Radcliffe (Doc. No. 79). For the following reasons, Defendant's Motion (Doc. No. 76) is **GRANTED** and Plaintiffs' Motion (Doc. No. 79) is **DENIED**.

**I.    SUMMARY JUDGMENT STANDARD**

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide

issues of fact. *Id.* at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in her favor. *Id.* at 255.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Id.* at 256. The nonmoving party must at least present probative evidence from which jury might return a verdict in his favor. *Id.* at 257. Furthermore, the nonmoving may not simply allege facts, but instead must "identify those facts of record which would contradict the facts identified by the movant." *Port Auth. of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002). The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When parties file cross-motions for summary judgment, the court must apply the summary judgment standard to each party's motion individually. *See Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987).

## II.   FACTUAL BACKGROUND[1]

Plaintiff Megan Exel is the mother of children E.V. and A.R. (the Children"). Bryant Cert., Ex. E ("Megan Exel Dep.") 9:22–25. Plaintiff Joseph Radcliffe is Ms. Exel's boyfriend and the father of A.R. Bryant Cert., Ex. F ("Radcliffe Dep.) 15:17–25. Plaintiff David Exel is Ms. Exel's father and the maternal grandfather of the Children. Bryant Cert., Ex. G ("David Exel Dep.") 7:15–17. Defendant Nichole Govan is a caseworker for the New Jersey Division of Child

---

[1] In considering Defendant's motion for summary judgment, the Court sets forth the facts in the light most favorable to Plaintiffs.

Protection and Permanency ("DCP&P"), formerly known as the Division of Youth and Family Services ("DYFS"). Bryant Cert., Ex. C at 2535 ("Verified Compl.").

On July 27, 2011, Ms. Exel and Mr. Radcliffe had an argument in a road in their apartment complex while Mr. Exel remained inside with the Children. Megan Exel Dep. 31:17–24. At some point, Mr. Radcliffe attempted to leave in his truck, Ms. Exel attempted to stop him from leaving, and the police arrived and arrested Ms. Exel. *Id.* 32:1–14. Because of this incident, Defendant went to Ms. Exel and Mr. Radcliffe's apartment on August 2, 2011 to speak with the family. Radcliffe Dep. 22:6–21. On August 5, 2011, she determined the allegations against Ms. Exel to be "unfounded." Rosellini Cert., Ex. B (August 1, 2011 DCF Investigation Summary)

On August 18, 2011, Defendant received a referral from the paternal grandparents of one of Ms. Exel's children that Ms. Exel and Mr. Radcliffe "were physically fighting in front of the children." Megan Exel Dep. 36:12–15. Because of the second referral, Defendant again went to Ms. Exel and Mr. Radcliffe's apartment. *Id.* 39:2–11. Defendant presented Plaintiffs with a Safety Protection Plan, and she told them that if they did not sign it, she would immediately remove the children. *Id.* 39:12–16. Plaintiffs signed the Safety Protection Plan. *Id.* 40:3–13.

The Safety Protection Plan stated that: "If the children are found in the care of Megan and Joseph unsupervised the case can be litigated or the children may be removed." Bryant Cert., Ex. B ("Safety Protection Plan"). Defendant explained to Plaintiffs that they would be in violation of the Safety Protection Plan if Ms. Exel or Mr. Radcliffe were with the children unsupervised, and that the Safety Protection Plan would remain in place until September 1, 2011. Radcliffe Dep. 26:11–27:11.

On Wednesday, August 24, 2011, Mr. Radcliffe and Defendant spoke on the telephone, and Defendant told him that "she found out that the information was unfounded and that she is

dropping the safety plan, she is just finishing up the paperwork." *Id.* 29:1–8. Defendant did not tell Mr. Radcliffe that the Safety Protection Plan had been lifted, but rather that "she was lifting it and she was finishing up her paperwork." *Id.* 32:2–4. No DCP&P employee told Mr. Radcliffe that the Safety Protection Plan was no longer in place. *Id.* 34:13–16.

On Monday, August 29, 2011, Janay Taylor, another DCP&P employee, went to Mr. Exel's house and discovered that Ms. Exel and Mr. Radcliffe had taken A.R. to their apartment unsupervised over the weekend. David Exel Dep. 14:9–21; Radcliffe Dep. 37:17–25. Ms. Taylor then went to Ms. Exel and Mr. Radcliffe's apartment. Megan Exel Dep. 64:7–11. Mr. Exel and E.V. also went to the apartment. David Exel 24:1–4.

At some point, Ms. Taylor called her supervisor, who told her that the Safety Protection Plan was "still intact." Bryant Cert., Ex. I ("Janay Taylor Dep.") 137:9–23. Ms. Exel spoke to Defendant on the phone, and Defendant told her that she was coming to remove the Children because Plaintiffs violated the Safety Protection Plan. Megan Exel Dep. 66:3–8. When Defendant arrived at the apartment, she again told Ms. Exel that she was going to remove the Children. *Id.* 68:16. Ms. Exel and Defendant argued, and Defendant explained that she was taking the Children because Plaintiffs violated the Safety Protection Plan. *Id.* 68:18, 69:4–7.

On August 31, 2011, a New Jersey Deputy Attorney General filed a "Verified Complaint for Custody" with the State Superior Court, Family Part. *See* Verified Compl.; Plaintiffs' Statement of Material Facts ("PSOMF") ¶16. Defendant signed an affidavit in support of the Verified Complaint, which contained a review of the relevant portion of the case file. *See* Verified Compl. Ms. Exel and Mr. Radcliffe were named in the Verified Complaint, but Mr. Exel was not named. *See id.* A New Jersey Superior Court judge conducted a "Dodd" hearing and affirmed the emergency removal because Plaintiffs violated the Safety Protection Plan. *See*

4

Rosellini Cert., Ex. I (August 31, 2011 Order of the Superior Court of New Jersey, Chancery Division Family Part). Ms. Exel had full custody of her children returned to her in June 2012. Megan Exel Dep. 80:8–81:9.

## III.   DISCUSSION

Plaintiffs filed their original Complaint on July 11, 2012, bringing claims under Section 1983[2] and New Jersey state law against Ms. Govan and various other defendants (Doc. No. 1). Plaintiffs filed their Amended Complaint on July 30, 2013 (Doc. No. 20). Only Plaintiffs' claims under Section 1983 against Defendant in her personal capacity remain before this Court. *See* January 23, 2014 Order (Doc. No. 28). Defendant now moves for summary judgment (Doc. No. 76). Plaintiffs oppose Defendant's motion and move for summary judgment as to her liability (Doc. No. 79).

Plaintiffs claim that Defendant is liable under Section 1983 because she violated their constitutional right to family integrity, failed to advise them of their constitutional rights, and attested to misleading and/or fabricated allegations in the Verified Complaint. *See* Pls.' Opp'n Br. at 21–22, 30; PSOMF ¶ 19–22. Defendant argues that she is entitled to qualified immunity regarding her emergency removal of the Children on August 29, 2011. *See* Def.'s Br. at 14. She argues that she is entitled to absolute immunity for her actions following the emergency removal. *See id.* at 32. Plaintiffs contend that they are entitled to judgment as a matter of law as to Defendant's liability. *See generally* Pls.' Opp'n Br.

---

[2] Section 1983 states in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ." 28 U.S.C. § 1983.

### A.     August 29, 2011 Emergency Removal of E.V. and A.R.

Qualified immunity protects government officials from civil liability. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is "an immunity from suit rather than a mere defense to liability" so it is "effectively lost if a case is erroneously permitted to go to trial." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511 (1985)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2085 (2011). Government officials are entitled to qualified immunity unless (1) the plaintiff has shown facts that make out a violation of a constitutional right, and (2) the right at issue was "clearly established" at the time of the alleged misconduct. *Pearson*, 555 U.S.at 232. The court has discretion to decide which element to decide first. *Id.* at 236.

Plaintiffs argue that Defendant is liable under Section 1983 for violation of their right to family integrity. Pls.' Opp'n Br. at 21. Because it is dispositive, this Court will address only whether the right at issue was "clearly established" when Defendant removed the Children in August 2011. The relevant question is "whether a reasonable public official would know that his or her *specific conduct* violated clearly established rights." *Grant v. City of Pittsburgh*, 98 F.3d 116, 121 (3d Cir. 1996) (citing *Anderson v. Creighton*, 483 U.S. 635, 636–37 (1987)). Defendant is entitled to qualified immunity unless there was "sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that . . . her conduct is constitutionally prohibited." *Mammaro v. New Jersey Division of Child Protection and Permanency*, --- F.3d ---, 2016 WL 683637 at *3 (3d Cir. Feb. 19, 2016) (quoting *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001)).

As in *Mammaro*, Plaintiffs "contend that the right at issue is [their] right to be free from the temporary removal of [the Children] unless there is 'some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse.'" *Id.* (citing *Croft v. Westmoreland Cnty. Children & Youth Servs.*, 103 F.3d 1123, 1126 (3d Cir. 1997)). The Third Circuit held that "[t]his definition is too broad for purposes of qualified immunity[.]" *Id.* This Court must consider Plaintiffs' substantive due process rights in light of the specific evidence presented. *Id.* at *4. Plaintiffs "must show that the law was so well established" at the time of removal that "a reasonable caseworker would have understood that temporarily removing a child in those circumstances would violate substantive due process." *Id.*

Plaintiffs signed a Safety Protection Plan which stated that: "If the children are found in the care of Megan and Joseph unsupervised the case can be litigated or the children may be removed." Defendant informed Plaintiffs that the Safety Protection Plan would remain in place until September 1, 2011. Radcliffe Dep. 26:11–22. Although Defendant told Mr. Radcliffe that she was "lifting" the Safety Protection Plan, neither she nor any other DCP&P employee told Plaintiffs that the Safety Protection Plan was no longer in place. *Id.* 32:2–4; 34:13–16. Plaintiffs therefore violated the Safety Protection Plan when Ms. Exel and Mr. Radcliffe brought A.R. to their apartment on Friday, August 26, 2011. *Id.* 37:17–25. Defendant removed the Children because Plaintiffs violated the Safety Protection Plan.[3] *See* Megan Exel Dep. 66:3–8; Radcliffe Dep. 39:6–9.

---

[3] Plaintiffs assert that "the only purported basis for the removal was the alleged violation of the Safety Protection Plan." PSOMF ¶ 41. *See also id.* ¶ 49 ("[T]he sole justification for the emergent removal of A.R. and E.V. was an alleged violation of the Safety Protection Plan.").

The Third Circuit in *Mammaro* held that "there was no consensus of authority that temporarily removing a child after the parent takes the child from approved housing violates substantive due process." 2016 WL 683637 at *4. Similarly, and dispositive to this case, there was no consensus of authority at the time Defendant removed the Children that temporarily removing children after the parent violates a safety protection plan is a violation of substantive due process. The Supreme Court "has never found a substantive due process violation when state agencies temporarily remove a child, whatever the circumstances of the removal." *Id.* Furthermore, there is no consensus of persuasive authority that removing the Children was an "unconstitutional interference with the parent-child relationship." *Id.*

As in *Mammaro*, Plaintiffs' reliance on *Croft* is misplaced. As the Third Circuit explained, "[p]utting aside the question of whether one case is sufficient to establish a 'robust consensus of persuasive authority,' *Croft* is factually off point." *Id.* Defendant relied on allegations of domestic violence between Ms. Exel and Mr. Radcliffe made by the paternal grandparents of one of Ms. Exel's children, not on a "six-fold hearsay report by an anonymous informant[.]" *See id.* at *4; *Croft*, 103 F.3d at 1126. Furthermore, the "immediate impetus" for Defendant removing the Children was Plaintiffs' violation of the Safety Protection Plan—"a factor not present in *Croft*." *Mammaro*, 2016 WL 683637 at *5. *Croft* therefore did not put Defendant on notice that her conduct violated Plaintiffs' substantive due process rights. *See id.*

Because Defendant did not violate any "clearly established" right, she is entitled to qualified immunity for her emergency removal of the Children. This Court will grant Defendant's motion for summary judgment as to Plaintiffs' Section 1983 claim for violation of the right to family integrity. Plaintiffs' motion for summary judgment as to Defendant's liability on this claim will therefore be denied.

B.     **Failure to Advise Plaintiffs of Constitutional Rights**

Plaintiffs also argue that Defendant is liable under Section 1983 for violating their procedural due process rights by "failing to provide proper notice of their constitutional rights in the Safety Protection Plan." *See* Pls.' Opp'n Br. at 30. This Court assumes, without deciding, that Plaintiffs presented enough evidence that a reasonable jury could infer that Defendant did not inform Plaintiffs of their constitutional rights. This Court further assumes, without deciding, that it is indeed a due process violation to coerce parents to sign a safety protection plan without notifying them of their rights to an attorney or a hearing. Defendant is entitled to qualified immunity because such due process rights were not "clearly established" when Defendant implemented the Safety Protection Plan in August 2011.

Plaintiffs assert that "[t]his failure to provide notice with the implementation of such plans has long been considered a violation of clearly established Constitutional Rights in the Third Circuit." Pls.' Opp'n Br. at 31. Plaintiffs, however, cite only to one case in the Middle District of Pennsylvania. *See Isbell v. Bellino*, 962 F. Supp. 2d 738 (M.D. Pa. 2013). To conclude that procedural due process rights relating to safety protection plans were clearly established, the court in *Isbell* relied on its previous decision in *Starkey v. York County*. *See* 2012 WL 9509712 (M.D. Pa. Dec. 20, 2012). Even if district court cases were sufficient to establish a "robust consensus of persuasive authority," *Isbell* and *Starkey* were both decided well after Defendant implemented the Safety Protection Plan in this case. These cases therefore did not provide *any* notice to Defendant that "her conduct is constitutionally prohibited." *See Mammaro*, 2016 WL 683637 at *3.

Both *Isbell* and *Starkey* rely on *Croft* to hold that it is clearly established that "coercing parents to sign a safety plan under threat that the county or state will otherwise take emergency

9

custody of their children raises procedural due process concerns." *See Starkey*, 2012 WL 9509712 at *9. Relying on the Third Circuit's recent decision in *Mammaro*, this Court must disagree that such due process rights were "clearly established" by *Croft*. *See* 2016 WL 683637 at *4. The Third Circuit in *Mammaro* assumed, without deciding, that "a consensus of persuasive authority could clearly establish a right" in the absence of Supreme Court precedent. *Id.* The Third Circuit also explicitly set "aside the question of whether one case is sufficient to establish a 'robust consensus of persuasive authority[.]" *Id.* Even if this Court decided both questions in favor of Plaintiffs, *Croft* decided only that it was a violation of *substantive* due process for the government to remove a father from the home without "an objectively reasonable suspicion of abuse." *See* 103 F.3d at 1126. Regarding *procedural* due process, *Croft*—in a footnote—"note[d] only that the policy of removing the suspected parent from the family home during the pendency of child abuse investigations absent any procedural safeguards raises a procedural due process issue." *Id.* at 1125 n.3. This Court holds that such dicta alone did not clearly establish the due process rights alleged here by Plaintiffs.

Plaintiffs fail to provide—and this Court's independent research fails to reveal—"sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that . . . her conduct is constitutionally prohibited." *Mammaro*, 2016 WL 683637 at *3 (quoting *McLaughlin*, 271 F.3d at 572). Without such precedent, Plaintiffs cannot show that Defendant violated any "clearly established" right. She is therefore entitled to qualified immunity. This Court will grant Defendant's motion for summary judgment as to Plaintiffs' Section 1983 claim for violation of the right to procedural due process. This Court will deny Plaintiffs' motion for summary judgment as to Defendant's liability on this claim.

### C.     Actions Following the Emergency Removal

On August 31, 2011, Defendant signed an affidavit testifying that the Verified Complaint for Custody was "true to the best of [her] knowledge and belief." *See* Verified Compl. Plaintiffs argue that the Verified Complaint "was intentionally misleading and was fabricated to justify the emergency removal." *See* PSOMF ¶ 19.[4] Plaintiffs further argue that Mr. Exel was "deprived of his day in court" because he was "not named in the Verified Complaint as a Defendant[.]" *See id.* ¶ 21–22. Defendant argues that she is entitled to absolute immunity for her actions following the August 29, 2011 emergency removal of the Children. Def.'s Br. at 32.

The Third Circuit held that "child welfare workers and attorneys who prosecute dependency proceedings on behalf of the state are entitled to absolute immunity from suit for all of their actions in preparing for and prosecuting such dependency proceedings." *Ernst v. Child and Youth Servs. of Chester Cnty.*, 108 F.3d 486, 488–89 (3d Cir. 1997). "[A]bsolute immunity protects not only caseworkers' presentations of their recommendations to a court, but also their 'gathering and evaluation of information' to formulate those recommendations and to prepare for judicial proceedings." *See B.S. v. Somerset Cnty.*, 704 F.3d 250, 269 (3d Cir. 2013) (quoting *Ernst*, 108 F.3d at 498). Defendant clearly signed the affidavit to "prepar[e] for . . . dependency proceedings." *Ernst*, 108 F.3d at 488–89. Her motivation is "irrelevant to the absolute immunity analysis." *Light v. Haws*, 472 F.3d 74, 79–80 (3d Cir. 2007). The contents of the Verified Complaint are also irrelevant to the absolute immunity analysis. Defendant was acting as an advocate for the State when she attested to the Verified Complaint submitted to the state court for the "Dodd" hearing. Her role is easily analogized to a prosecutor submitting an information

---

[4] Statements of material fact "shall not contain legal argument or conclusions of law." L. Civ. R. 56.1(a). Although this Court need not consider any arguments made in the statement of material facts, it will do so for clarity's sake.

11

in the criminal context. Defendant is therefore entitled to absolute immunity for signing the affidavit and testifying to the truthfulness of the Verified Complaint.

Plaintiffs also argue that "*DCP&P* proceeded with an entirely new fabricated theory of abuse or neglect" at Ms. Exel's hearing in New Jersey Superior Court and that "*DYFS* attempted to transfer custody of E.V. to the biological father in Florida." *See* PSOMF ¶¶ 23, 41 (emphases added). Plaintiffs make various other assertions against DCP&P and DYFS. *See, e.g.*, PSOMF ¶ 46 ("the plan of DCP&P was always to take the matter concerning the allegations of the August 18, 2011 referral to court"). The only claims remaining in this case are those against Ms. Govan in her personal capacity. Plaintiffs present no evidence that *Defendant* fabricated anything in relation to Ms. Exel's hearing or that *Defendant* attempted to transfer E.V. to her biological father.

Defendant is entitled to absolute immunity for her actions in "preparing for and prosecuting . . . dependency proceedings." *Ernst*, 108 F.3d at 488–89. This Court will therefore grant judgment as a matter of law to Defendant against Plaintiffs' Section 1983 claims arising out of the judicial proceedings following the Children's removal. This Court will deny Plaintiffs' motion for summary judgment as to Defendant's liability on these claims.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's Motion is **GRANTED** and Plaintiffs' Motion is **DENIED**.

Dated:     03/22/2016                                                                s/ Robert B. Kugler
                                                                                                      ROBERT B. KUGLER
                                                                                                      United States District Judge